UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

CHERYL S.,

                                        Plaintiff,

                        v.

ANDREW SAUL,
Commissioner of Social Security,

                                   Defendant.

_____

<u>DECISION AND ORDER</u>

20-CV-0378L

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On January 27, 2017, plaintiff filed an application for supplemental security income, alleging an inability to work since January 1, 2008. (Dkt. #12-2 at 11). Her application was initially denied. Plaintiff requested a hearing, which was held January 29, 2019 before Administrative Law Judge ("ALJ") Stephan Bell. (Plaintiff did not attend the hearing, but counsel appeared on her behalf.) The ALJ issued an unfavorable decision on February 20, 2019, concluding that plaintiff was not disabled under the Social Security Act. (Dkt. #12-2 at 11-21). That decision became the final decision of the Commissioner when the Appeals Council denied review on January 29, 2020 (Dkt. #12-2 at 1-4). Plaintiff now appeals.

The plaintiff has moved pursuant to Fed. R. Civ. Proc. 12(c) for judgment vacating the ALJ's decision and remanding the matter for further proceedings (Dkt. #13), and the

Commissioner has cross moved for judgment dismissing the complaint (Dkt. #14). For the reasons set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the complaint is dismissed.

## DISCUSSION

Familiarity with the five-step evaluation process for determining Social Security disability claims is presumed. *See* 20 CFR §404.1520. The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).

### I.       The ALJ's Decision

Plaintiff was born December 1, 1960, and was 47 years old on the alleged onset date, with a high school education and no past relevant work. (Dkt. #12-2 at 19-20). Her treatment records reflect a history of mental impairments variously diagnosed as major depressive disorder, anxiety disorder unspecified, post-traumatic stress disorder, and bipolar disorder, which the ALJ found to be severe impairments not meeting or equaling a listed impairment.

In applying the special technique, the ALJ determined that plaintiff has a mild limitation in understanding, remembering, or applying information, a mild limitation in interacting with others, a moderate limitation in concentration, persistence and pace, and a moderate limitation in adapting or managing herself. (Dkt. #12-2 at 15).

The ALJ determined that the plaintiff retained the residual functional capacity ("RFC") to perform work at all exertional levels, but is limited to simple, routine, and repetitive tasks involving only simple work-related decisions. (Dkt. #12-2 at 16).

When presented with this RFC at the hearing, vocational expert ("VE") Tania Shullo testified that a person with this RFC could perform the representative position of dryer attendant, with 50,000 jobs nationally. (Dkt. #12-2 at 20). The ALJ accordingly found plaintiff not disabled.

## II.     The Appeals Council's Consideration of Subsequent Evidence

Plaintiff argues that the Appeals Council failed to sufficiently review, and improperly rejected, the November 9, 2017 opinion of plaintiff's treating psychiatric nurse practitioner, David Pfalzer. Mr. Pfalzer's opinion had not been part of the record before the ALJ, but was submitted to the Appeals Council after the ALJ's decision. Based on a 5-year treatment history related to depression and panic disorder, Mr. Pfalzer opined that plaintiff (among other, no more than moderate limitations) was "very" limited in understanding and remembering instructions, maintaining attention and concentration, and functioning at a consistent pace. He further indicated that plaintiff's limitations precluded her from engaging in competitive employment for 80 hours or more per month. (Dkt. #12-2 at 42-43). In rejecting the opinion, the Appeals Council found that it was not likely to have changed the outcome of the ALJ's decision. (Dkt. #12-2 at 2).

A claimant may submit additional evidence to the Appeals Council after an ALJ's decision, which the Appeal Council must consider if is new, material, and relates to the period preceding the ALJ's decision, and where it is reasonably probable that the additional evidence could change the outcome of the decision. *See* 20 C.F.R. §416.1470(a)(5).

Here, Mr. Pfalzer's opinion was not new, and plaintiff made no showing of good cause why it was not submitted earlier.

Furthermore, plaintiff has not shown that there is a reasonable likelihood that the opinion would have changed the ALJ's decision. The opinion consisted of a series of checkmarks on a boilerplate form, without any supporting narrative explanation or treatment notes, and was

duplicative, in both form and substance, of the opinion of plaintiff's treating substance abuse counselor, Kelly Donogher, which the ALJ duly discussed, and to which he gave "little" weight. (Dkt. #12-2 at 19).

It is also noteworthy that the opinion at issue was rendered by a non-acceptable medical source. Generally, "the only requirement for the Commissioner's assessment of an opinion from a non-acceptable medical source is that he address and discuss the opinion, which the Appeals Council did." *Williams v. Commissioner*, 2020 U.S. Dist. LEXIS 170647 at *9 (W.D.N.Y. 2020) (citing *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011)). Ultimately, the Commissioner "has the discretion to determine the appropriate weight to accord the [other source]'s opinion based on the all evidence before him." *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995). Under the circumstances presented here, I do not find that the Appeals Council erred in finding that Mr. Pfalzer's opinion was neither new, nor likely to change the outcome of the decision.

### III.    The Effect of Plaintiff's Non-Severe Impairments

At Step Two of his analysis, the ALJ discussed plaintiff's diagnoses of, inter alia, carpal tunnel syndrome and degenerative disc disease of the lumbar spine, but found them to be non-severe impairments. (Dkt. #12-2 at 14).

An ALJ is required to "consider the combined effect of all of [a claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity" to establish disability. *Melendez v. Commissioner*, 2020 U.S. Dist. LEXIS 131543 at *8 (W.D.N.Y. 2020)(citing 20 C.F.R. §§404.2534(c), 416.923(c)). Plaintiff claims that the ALJ's RFC finding, which contained no exertional limitations, failed to account for the limitations caused by plaintiff's non-severe impairments of carpal tunnel syndrome and degenerative disc disease, and that remand is therefore required.

The Court disagrees. While remand is necessary where an ALJ's RFC determination fails to account for greater-than-minimal limitations stemming from a claimant's non-severe impairments, here there was no evidence of record suggesting that any such limitations existed. Physical examinations of the plaintiff were consistently within normal limits with respect to her gait, range of motion, strength, dexterity, grip strength, reflexes, and sensation. (Dkt. #12-7 at 275-76, 278-79, 297-98, 339, 348-49, 350-51). Because the record did not indicate that plaintiff's carpal tunnel syndrome or degenerative disc disease caused any particular exertional limitations, the ALJ's failure to include such limitations in his RFC finding was not improper.

Plaintiff also argues that to the extent the ALJ's findings with respect to plaintiff's carpal tunnel syndrome relied on the medical opinions of record, those opinions were "stale," because plaintiff was not diagnosed with carpal tunnel syndrome until on or after May 8, 2018, several months after the medical opinions had already been authored. (Dkt. #12-7 at 345-46).

Plaintiff is correct that in general, "an ALJ should not rely on 'stale' opinions — that is, opinions rendered before some significant development in the claimant's medical history," *Robinson v. Berryhill*, 2018 U.S. Dist. LEXIS 158202 at *11 (W.D.N.Y. 2018), and that "[m]edical source opinions that are . . . stale[] and based on an incomplete medical record may not be substantial evidence to support an ALJ finding," *Davis v. Berryhill*, 2018 U.S. Dist. LEXIS 39605 at *6 (W.D.N.Y. 2018). However, "a medical opinion is [not] stale merely because it pre-dates other evidence in the record, where . . . the subsequent evidence does not undermine [the opinion evidence]." *Davis v. Commissioner*, 2019 U.S. Dist. LEXIS 156059 at *11-*12 (W.D.N.Y. 2019)(quoting *Hernandez v. Colvin*, 2017 U.S. Dist. LEXIS 77447 at *28 (W.D.N.Y. 2017)).

Here, the record contains no persuasive proof that plaintiff's carpal tunnel syndrome caused any limitations to her ability to perform work-related functions. Indeed, plaintiff points to no

evidence that would undermine the ALJ's observation that plaintiff had never sought specialized treatment for it, or his finding that "while the record documents the claimant's carpal tunnel syndrome . . . there is no evidence that th[is] condition[] cause[s] more than minimal work-related limitations." (Dkt. #12-2 at 14). *See* Dkt. #12-7 at 345-46 (May 8, 2018 visit to treating internist, plaintiff complains of pain and numbness in left wrist and arm, carpal tunnel syndrome is first diagnosed); 334-35 (June 28, 2018 visit: plaintiff has no carpal-tunnel related complaints or extremity-related symptoms); 343-44 (May 29, 2018 visit: plaintiff has no carpal tunnel-related complaints or extremity-related symptoms); 338-39 (July 20, 2018 visit: plaintiff "requests wrist brace for bilateral CTS" but shows no pain or swelling: physician recommends vitamins, ice, bracing and rest).

Moreover, even assuming *arguendo* that there were exertional limitations related to plaintiff's carpal tunnel syndrome which arose in or after May 2018 (Dkt. #12-7 at 345-46, 338-39), there is no indication that such limitations existed for a time period sufficient to satisfy the 12-month durational requirement. The ALJ's decision was rendered just nine months after plaintiff's first complaint of carpal tunnel syndrome symptoms. *See Graber v. Commissioner*, 2020 U.S. Dist. LEXIS 124976 at *17 (W.D.N.Y. 2020)(opinions upon which ALJ relied were not "stale" where plaintiff failed to show that a subsequently-arising impairment posed limitations which met the durational requirement).

For these reasons, the ALJ's reliance on medical opinions of record which pre-dated plaintiff's carpal tunnel diagnosis was not improper.

### IV.    The ALJ's Assessment of the Opinions of Treating Sources

Plaintiff also alleges that the ALJ failed to properly evaluate a January 25, 2019 opinion by Credentialed Alcoholism and Substance Abuse Counselor ("CASAC") Kelly Donogher (Dkt.

#12-7 at 376-77), and erred by giving greater weight to the opinions of consulting psychologist

Dr. Evelyn Smigelsky (Dkt. #12-7 at 289-95), and reviewing psychiatric consultant Dr. A. Dipeolu

(Dkt. #12-7 at 301-303). Specifically, plaintiff argues that the ALJ overlooked the treating

physician rule in assessing CASAC Donogher's opinion, which the ALJ evidently concluded had

been completed by both Donogher and plaintiff's treating psychiatrist, Dr. Jeffrey Kashin. (Dkt.

#12-2 at 19).

The "treating physician rule," which is applicable to the analysis of claims which were

filed on or before March 27, 2017, provides that a treating physician's opinion is entitled to

controlling weight where it is well-supported by medically acceptable clinical and laboratory

diagnostic techniques, and is not inconsistent with the other substantial evidence in the record. 20

C.F.R. §404.1527(c)(2). In determining the weight to be afforded to a treating physician's medical

opinion, the ALJ must consider several factors, including: (1) the frequency of examination and

the length, nature and extent of the treatment relationship; (2) the evidence in support of the

opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is

from a specialist; and (5) other factors that tend to support or contradict the opinion. *Halloran v.*

*Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). Whatever weight the

ALJ assigns to the treating physician's opinion, he must "give good reasons" for his determination.

20 C.F.R. §404.1527 (c)(2).

An ALJ's failure to explicitly consider the relevant factors in assigning weight to a treating

physician's opinion, or to give good reasons therefor, can constitute grounds for a remand. *See*

*Wagner v. Commissioner*, 435 F. Supp. 3d 509, 514-15 (W.D.N.Y. 2020).

Initially, the Court observes that the ALJ's attribution of Donogher's January 25, 2019

opinion to plaintiff's treating psychiatrist Dr. Kashin does not appear to be supported by the record,

as the opinion was neither written nor cosigned by Dr. Kashin. Rather, according to the signature

block, the opinion's author was "Kelly Donogher – CASAC," after which is written: " /DR.

KASHIN." (Dkt. #12-7 at 377). Donogher's signature appears in cursive, while "DR. KASHIN"

is block-printed at an angle, in what appears to be Donogher's handwriting. Notwithstanding the

appearance of Dr. Kashin's partial name on the form, there is no stamp or signature to indicate that

he ever personally directed, reviewed, or endorsed its contents. As such, the Court finds no basis

to apply the treating physician rule to Donogher's January 25, 2019 opinion. *See e.g.*, *Jones v.*

*Saul*, 2020 U.S. Dist. LEXIS 47029 at *9 n.3 (W.D.N.Y. 2020)(an assessment which was not

authored or cosigned by a treating physician is not entitled to application of the treating physician

rule). *See generally James N. v. Commissioner*, 2020 U.S. Dist. LEXIS 39927 at *16 (N.D.N.Y.

2020)(where agency physician did not sign single decisionmaker's report next to the single

decisionmaker's signature, but "signed in entirely different spots," it would be pure "conjecture"

for the Court to conclude that the agency physician endorsed the single decisionmaker's report).

However, even assuming *arguendo* that Donogher's opinion had been endorsed by Dr.

Kashin, the ALJ sufficiently explained his reasoning for declining to grant it controlling weight,

and furnished good reasons for giving it the "little" weight he assigned. Specifically, the ALJ cited

the perfunctory, checkbox nature of the form that was used, and the inconsistency of the opinion

with the medical evidence of record. For example, the ALJ noted, the opinion described "marked"

and "extreme" limitations in areas such as carrying out simple instructions, maintaining

concentration, and making simple work-related decisions, which were inconsistent with plaintiff's

conservative treatment history and consistently-noted alert and oriented status and intact memory

on examination, as well as with her demonstrated ability to live alone, take care of her home and

personal needs, and engage in hobbies such as reading and crocheting. (Dkt. #12-2 at 19).

Similarly, the ALJ found that the extreme limitations in interacting with others and exhibition of extreme behaviors that the opinion identified were inconsistent with plaintiff's Function Reports and treatment records, which consistently showed generally normal speech, ability to socialize, and ability to use public transportation, and reflected plaintiff's own denial that she had any problems getting along with others. *Id*.

Furthermore, while plaintiff is correct that an ALJ may not reject a medical assessment solely because it appears on a checkbox form, a lack of supportive clinical findings in any medical opinion — a deficiency to which checkbox forms are especially vulnerable — is relevant to the ALJ's consideration of that opinion. As such, "good reasons" for discounting a treating physician's opinion may include the fact that the opinion was "merely [a] checkbox form[] that offer[s] little or nothing with regard to clinical findings and diagnostic results," particularly where, as here, the limitations indicated on the form are "inconsistent with the moderate findings reflected in the [claimant's treatment] notes." *Dereu v. Saul*, 2020 U.S. Dist. LEXIS 161609 at *10 (W.D.N.Y. 2020)(quoting *Heaman v. Berryhill*, 765 Fed. App'x 498, 501 (2d Cir. 2019)(unpublished opinion)).

In short, the ALJ's characterization of plaintiff's mental health treatment records and activities of daily living was not erroneous, and he sufficiently set forth "good reasons" for declining to afford controlling weight to the January 25, 2019 mental RFC opinion.

I therefore conclude that the ALJ's decision is supported by substantial evidence, and was not the result of legal error. I have considered the remainder of plaintiff's arguments, and find them to be without merit.

**CONCLUSION**

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #13) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #14) is granted. The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       May 11, 2021.